Samuel TORRENCE, Plaintiff,

v.

CHICAGO TRIBUNE COMPANY, INC., Charles Levy Circulating Company, Inc., First National Bank of Chicago, Chicago Newspaper Publishers' Association-Drivers Union Pension Administrative Board, Chicago Sun-Times Newspaper Division of Field Enterprises, Inc., Capitol News Agency, Defendants.

No. 81 C 0151.

United States District Court, N. D. Illinois, E. D.

Feb. 11, 1982.

See also D.C. 535 F.Supp. 743.

James J. Seaberry, Chicago, Ill., for plaintiff.

David A. Youngerman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Samuel Torrence brought this action under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), seeking relief for the alleged wrongful denial of pension fund benefits. Named as defendants were the Chicago Newspaper Association-Drivers Union Pension Plan ("Plan"), the Chicago Newspaper Association-Drivers Union Pension Administrative Board ("Board"), and the First National Bank of Chicago ("Trustee").[1] Jurisdiction is alleged pursuant to 29 U.S.C. § 1132(e). On December 1, 1981, this Court granted defendants' motion for partial summary judgment as to plaintiff's claim that the Board's decision denying him benefits was arbitrary and capricious. Disposition of defendants' motion for full summary judgment was continued however, pending the submission of supplemental briefs relating to plaintiff's claim that defendants may be equitably estopped from denying him pension benefits. We now deny defendants' pending motion for summary judgment.

The factual background of this case is set out in some detail in the Court's prior opinion resolving the first issue raised by this motion.[2] The equitable estoppel issue presented here arises from plaintiff's decision in 1965 to leave the Capitol News Agency to work for the Charles Levy Circulating Company, Inc. ("Levy") delivering periodicals to low-volume outlets in troubled areas of Chicago. Torrence now alleges that union officials and Board members

---

1. Although originally named in this suit, the following defendants have been dismissed as improper parties to this action: the Chicago Tribune Company, the Charles Levy Circulating Company, Inc., the Chicago Sun-Times Newspaper Division of Field Enterprises, Inc. and the Capitol News Agency.

2. *Torrence v. Chicago Tribune Co., Inc.,* 535 F.Supp. 743 (1981).

induced him to take the job with Levy and assured him at the time that the job switch would not impair his pension rights. Plaintiff continued in this capacity until 1972 when he joined the Chicago Tribune Company as a driver-salesman. Throughout this entire period, plaintiff was a dues-paying member of the affiliated union. Upon his retirement, however, plaintiff learned that his seven years with Levy constituted a "break in service" disqualifying him from receiving benefits from the Union Pension Plan.[3] Plaintiff's opposition to defendants' motion for summary judgment is thus grounded on the premise that a material issue of fact exists whether the union's inducements and assurances to plaintiff in 1965 were sufficient under the circumstances to estop defendants from denying him pension benefits upon his retirement.

Assuming plaintiff's factual allegations are true, *Cedillo v. International Association of Bridge and Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10–11 (7th Cir. 1979), defendants in this action are not entitled to summary judgment. As reflected in our prior opinion on this motion, the applicability of the doctrine of equitable estoppel under ERISA is by no means clear. *Torrence, supra* at 747. Although the Seventh Circuit has questioned the "advisa-

bility of employing estoppel principles" in a union pension plan dispute, *Reiherzer v. Shannon*, 581 F.2d 1266, 1267 n.1 (7th Cir. 1978), no Seventh Circuit rule dictates the result in this case.[4] Under these circumstances, the Court is compelled to examine the rationale underlying courts' general reluctance to apply estoppel principles in union pension plan disputes and whether that rationale applies in this case.

The fiduciary duties of pension plan trustees under ERISA are directed "solely in the interest of participants and beneficiaries ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i) (1976). Moving defendants argue that compelling them to distribute pension benefits to plaintiff in this case would violate these fiduciary duties and work to the prejudice of eligible participants and beneficiaries. Defendants argue further that payment of pension benefits to a person who has been deemed ineligible to receive such benefits would impair the actuarial soundness of the pension plan. The Court finds none of these arguments persuasive in this case.

The fiduciary duty of pension plan trustees toward "participants and beneficiaries" under ERISA cannot be viewed myopically.[5]

---

**3.** According to § 1.1(e) of the Plan, an employee must have attained age sixty and accumulated ten years of vesting service to qualify for pension benefits. Although Torrence was sixty-two when he applied for pension benefits, his break in service from 1965 to 1972 resulted in the forfeiture of all prior credited service stemming from his work for the Chicago Sun-Times and the Capitol News Agency. This forfeiture provision was adopted by Board resolution in 1966.

**4.** In *Reiherzer, supra*, for example, the Seventh Circuit cited without comment Judge Reynolds' opinion in *Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332, 1338–39 n.5 (E.D.Wis. 1973), which recognized the right of an employee to assert an estoppel argument in the context of a union pension dispute of this kind. Judge Reynolds reiterated this conclusion on rehearing, 394 F.Supp. 193, 195 (E.D.Wis.1975) and the Seventh Circuit affirmed without an opinion. 570 F.2d 347 (7th Cir. 1977).

**5.** The statement of Congressional findings and declaration of policy in § 2 of ERISA, 29 U.S.C.

§ 1001 (1976) support a broad interpretation of this statute. For example, § 2 provides, *inter alia*:

(a) The Congress finds ... that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans ... and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

(b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants

As a remedial statute, ERISA was intended, *inter alia*, to "ensure that legitimate expectations of workers in receiving retirement benefits actually materialize." *United Association of Journeymen and Apprentices v. Myers*, 488 F.Supp. 704, 708 (M.D. La.1980). Viewing ERISA in this light, it would be incongruous for the Court to permit defendants to defeat the potentially legitimate expectations of plaintiff by resorting to a narrow interpretation of their statutory duties.

The defendants' fiduciary duty to provide benefits to participants and beneficiaries under the plan necessarily encompasses a subsidiary duty to maintain the integrity and credibility of the plan itself. The denial of benefits to plaintiff, a former participant, does not advance that end. The importance of such a duty is manifest in this case where, unlike many of the cases cited by the defendant,[6] union officials and Board members allegedly encouraged plaintiff to accept the job with Levy in addition to merely assuring him that his eligibility for benefits would continue. If union and Board officials are permitted to affirmatively mislead current participants in this manner, the fiduciary duty to provide pension benefits to those participants constitutes nothing more than a hollow formalism.

Further, this Court is not satisfied that compelling the defendants to distribute pension benefits to plaintiff would either deflate the pension fund for other eligible participants or impair the "actuarial soundness" of the Plan in any meaningful sense. The size of the pension fund in this case has been increased by contributions made in plaintiff's behalf by the Chicago Sun-Times, the Capitol News Agency and the Chicago Tribune for work performed from 1958 to 1965 and again from 1972 to 1979. Payment of pension benefits to plaintiff would simply draw upon those funds contributed to the Plan in his behalf.

Although the actuarial soundness of this pension fund no doubt depends in part upon contributions on behalf of employees who will never receive benefits, those same actuarial calculations cannot justify the denial of benefits to employees who will never receive benefits solely because of the affirmative misconduct of union officials and Board members. To deny plaintiff a possible remedy in this case would, in effect, elevate the alleged misconduct of defend-

and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

The legislative history of the Act makes clear that ERISA "is concerned with improving the fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income. In broad outline, the objective is ... to make sure to the greatest extent possible that those who do participate in such plans actually receive benefits and do not lose their benefits as a result of unduly restrictive forfeiture provisions...." 3 U.S.Code Cong. & Adm.News, 93rd Cong., 2d Sess., House Rpt. 93–807, pp. 4639, 4670, 4676–77 (1974).

6. In *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir. 1976), the Ninth Circuit rejected an estoppel claim based on representations by the Administrator of the pension fund that a break in service could be "healed" by retroactive contributions. *Id.* at 1107. Plaintiff did not claim that he was induced to accept the non-qualifying job, *id.* at 1107 n.1, nor did he claim that he was affirmatively encouraged to seek an early retirement upon payment of those retroactive contributions. In *Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), the Second Circuit rejected an estoppel claim based on the trustee's acceptance of employer's contributions on the employee's behalf. The employee's widow was accordingly denied benefits because the employer did not have a signed collective bargaining or trust agreement with the union. *Id.* at 116–17. Unlike the present case, the union never affirmatively induced the employee to take action which deprived him of pension benefits.

The Court also notes that neither the Second nor the Ninth Circuits adhere to an "unequivocal" rule rejecting principles of equitable estoppel in cases such as this. Subsequent to the cases cited above, both Circuits have substantively evaluated the merits of estoppel claims brought by plaintiffs to compel payments from a pension fund. *See Haeberle v. Board of Trustees of Buffalo Carpenters*, 624 F.2d 1132, 1139 (2d Cir. 1980); *Gordon v. ILWU-PMA Benefit Funds*, 616 F.2d 433, 439 (9th Cir. 1980).

ants to the level of a legitimate actuarial risk. This result, in addition to producing a substantial hardship for plaintiff, would fail to serve the interests of current participants and their beneficiaries to whom defendants owe a fiduciary duty.

The potential depletion of the pension funds cited by defendants as a result of this case is further mitigated by § 7.10(m) of the pension plan which requires that the Board:

> ... purchase such insurance and [ ] pay such premiums for the Members of the Board and any employees of the Board to cover any liability or loss to the trust funds occurring by reason of the act or omission of a Member of the Board and any employee of the Board, provided however that all such insurance shall permit recourse by the insurer of such insurance contracts against a Member of the Board in the case of a breach of a fiduciary obligation by such Member.

*Id.* Although neither party has raised this insurance provision in their supplemental briefs, it would appear from the terms of the provision that the pension fund will not be deflated in any way by granting relief to plaintiff if he can substantiate his allegations. To the extent plaintiff's benefits will be paid out of insurance proceeds, current participants and beneficiaries will not be prejudiced in any respect.

Recognizing, therefore, that principles of equitable estoppel may bar the defendants from denying plaintiff pension benefits, this Court will deny defendants' motion for summary judgment. It is so ordered.