**Charles E. TAYLOR, Plaintiff,**

v.

**SUBURBAN TEAMSTERS OF NORTH-ERN ILLINOIS FRINGE BENEFIT FUNDS, Defendant.**

**No. 83 C 7968.**

United States District Court, N.D. Illinois, E.D.

July 10, 1985.

Kim E. Presbrey, Presbrey, Presbrey & Swearingen, Ltd., Aurora, Ill., for plaintiff.

Stephen Feinberg, Asher, Pavalon, Gittler & Greenfield, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BUA, District Judge.

The above-captioned matter came before the Court for trial on the merits of plaintiff's employee benefits claim. The Court, having heard the testimony of witnesses on May 3, 1985, and having reviewed the record and the exhibits submitted into evidence by the parties, does hereby enter the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### I. FINDINGS OF FACT

1. The defendant is the Suburban Teamsters of Northern Illinois Welfare Fund ("the Welfare Fund").

2. The Welfare Fund is a multi-employer employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1) and (3).

3. This is an action by plaintiff for a declaratory judgment to clarify his rights to benefits under the Welfare Fund. This Court has jurisdiction over this action under 28 U.S.C. § 1132(e)(1).

4. The Welfare Fund extends a variety of medical and insurance benefits to eligible participants and their dependents according to eligibility criteria and benefit amounts specified in a Plan of Benefits ("the Plan").

5. Plaintiff, Charles E. Taylor, is a former participant in the Welfare Fund.

6. Plaintiff last worked for an employer making contributions to the Welfare Fund on his behalf ("a contributing employer") on or about August 18, 1981 when he was laid off.

7. Plaintiff's date of birth is December 24, 1927 and thus plaintiff was 53 years old at the time he last worked for a contributing employer.

8. At the time plaintiff ceased working for a contributing employer, the Welfare Fund's Plan of Benefits dated June 1, 1981 (Ex. 1) was in effect.

9. The June 1, 1981 Plan provided in Class S an option for participants who left covered employment for various reasons, including layoffs, to continue their participation in the Fund and their eligibility for benefits under the Plan by making self-contributions to the Fund. (Ex. 1, pp. 15–19, 57–67). In addition to paying the self-contribution amounts specified in the June 1, 1981 Plan (Ex. 1, pp. 62–67), coverage under Class S required, among other things, a written application submitted to the participant's union business office "not later than the 28th consecutive day following the last date on which he or she worked for a Contributing Employer..." (Ex. 1, p. 16, 63).

10. The June 1, 1981 Plan also specified eligibility criteria for retired employees of Contributing Employers. In pertinent part, the eligibility provision of the June 1,

1981 Basic Retirement Medical Expenses Benefits provided:

An employee who (1) has been eligible for benefits under this Plan for 10 or more calendar years and who has attained age 55, or, if later, has been eligible for 10 or more calendar years preceding the date of his or her retirement, (2) retired on or after June 1, 1981 while covered under Class A, B, C, D or S of this Plan, and (3) has made written application to the Trustees of the Welfare Fund for these Retiree and Spouse benefits, and has been found by the Trustees to have fulfilled all eligibility requirements of this Plan, shall be eligible for these Basic Retirement Medical Expense Benefits from the date such application was accepted by the Trustees. (Ex. 1, p. 79).

11. When he was laid off in August 1981, plaintiff was aware of the requirement of self-contributions to maintain his participation in the Fund. (R. 14).

12. Trustee Venard testified that he told the plaintiff in August 1981 of the self-paid Class S and that the plaintiff could receive retiree welfare benefits when he retired if he remained a participant in the Fund by making self-contributions. (R. 34).

13. Plaintiff did not file an application to maintain his Welfare Fund eligibility under Class S on or before September 15, 1981, 28 days after his last day worked for a contributing employer, or any time thereafter. (R. 24).

14. Plaintiff did not pay self-contributions to the Welfare Fund at any time after August 18, 1981. (R. 24).

15. No contributions were received by the Welfare Fund from any contributing employer on behalf of plaintiff for any period subsequent to August 18, 1981. (R. 24).

16. Plaintiff was not eligible for the Basic Retirement Medical Expense Benefits ("Retiree Benefits") under the June 1, 1981 Plan because he had not yet attained age 55 when he left covered employment and he retired after June 1, 1981 while not covered under Class A, B, C, D or S of the Plan. (R. 24, Ex. 1, p. 79).

17. By electing not to maintain his coverage under Class S of the Plan by making self-contributions, plaintiff ceased to be a participant in the Fund on September 15, 1981, 28 days after his last day worked for a contributing employer, in accordance with the provisions of the June 1, 1981 Plan. (R. 20; Ex. 1, p. 57).

18. The Trustees adopted a new Welfare Plan of Benefits effective September 1, 1982 (Ex. 2) and a new Retiree Plan of Benefits effective October 1, 1982. (Ex. 3, R. 33).

19. The Trustees do not dispute that, under the new eligibility provisions of the October 1, 1982 Retiree Plan, the plaintiff would have been eligible to apply for and receive the medical expense benefits available to retirees under the October 1, 1982 Plan if he had been a participant in the Welfare Fund on or after that date.

20. On August 6, 1982, plaintiff came to the office of the Welfare and Pension Funds to discuss his retirement plans. At that time, plaintiff was given Exhibit 4 by the Fund Manager, James Ewing. Exhibit 4 is a form indicating the pension benefits to which plaintiff is entitled if he retired effective January 1, 1983, a week after his 55th birthday, and the earliest date plaintiff could retire. (R. 16–18).

21. Plaintiff advised the Pension Fund in early October 1982 that he would seek an Early Pension Benefit to be effective January 1, 1983. (R. 18).

22. In a letter dated October 15, 1982 (Ex. 5), Ewing sent plaintiff the appropriate pension applications and also enclosed prepared application forms for Retiree Welfare Fund coverage. (R. 18–20). With respect to the Retiree Welfare Fund coverage, Ewing wrote:

The gold covered booklet that is enclosed describes the current Welfare benefits available to eligible retirees. The eligibility requirements appear on page 7. You would think from reading them that

you qualify for Welfare benefits after retiring, but since the book is dated October 1, 1982 it has been interpreted to apply only to those participants who were either still working at October 1, 1982 or were actually retired at that time.

You would come under the eligibility rules in effect in the previous book, which went into effect June 1, 1981. The rules in that book required that you remained employed through your 55th birthday. You may want to delay your retirement for a little longer in hopes of getting these Welfare benefits. Please call me up if you want to talk about this some more. (Ex. 5).

23. Ewing testified that, if plaintiff delayed his retirement and worked in covered employment causing contributions from a contributing employer to be made to the Welfare Fund on his behalf after October 1, 1982, plaintiff would have become a participant in the Welfare Fund after October 1, 1982 and his eligibility for retiree welfare benefits upon later retirement would have been determined by the provisions of the October 1, 1982 Plan. (R. 20).

24. Plaintiff submitted his application for an Early Pension Benefit and Retiree Welfare Fund Coverage on or about October 22, 1982. (Ex. 6).

25. On October 28, 1982, Ewing advised plaintiff by letter that his application for an Early Pension Benefit had been approved, but:

You were not approved for retirees Welfare Fund Benefits as you left active employment and coverage under the Fund at the age of 53. To be qualified for this benefit you would have to have remained covered through the age of 55 according to the terms of the Welfare Fund Summary Plan Description in effect at the time you left us. You have the right to appeal this determination on your Welfare Fund coverage. Instructions on filing an appeal are attached. (Ex. 7).

26. On April 20, 1983, the Trustees denied plaintiff's appeal. On April 21, 1983, plaintiff was advised by letter that the appeal had been denied by the Welfare Fund trustees because:

It has been a long standing policy of the Trustees of the Fund to consider an applicant as coming under whatever Welfare Plan of Benefits was in effect when he was last covered for those benefits, either through employment or self-payments that followed a period of employment. According to our records Mr. Taylor was last employed in our jurisdiction on August 18, 1981 when he was 53 years old, and did not self-pay after that. The Plan in effect in August 1981 required a Participant to remain covered to the date of his retirement and to the age of 55 to qualify for post-retirement Welfare benefits, and that was the basis for the denial of his most recent appeal. (Ex. 8).

27. At a September 22, 1982 meeting of the Welfare Fund trustees, the issue presented by plaintiff's Retiree Welfare Fund application had been previously considered for another applicant. (R. 22–23). The Trustees determined that the applicant, Donald Swanquist, was ineligible for the October 1, 1982 Retiree Benefits because "[i]t was the sense of the Trustees that the Plan in effect when a participant ceases to be actively engaged in Covered Employment is applicable in determining that participant's eligibility for benefits." (Ex. 9, p. 8).

28. The testimony of Fund Manager Ewing and Welfare Fund Trustee Venard establishes that the Welfare Fund has consistently determined retiree benefit eligibility of former Welfare Fund participants in accordance with the Plan of Benefits in effect at the time the individual's participation in the Fund ceased, without regard to eligibility or benefit changes effective subsequent to the termination of a particular former participant. (R. 25–26, 28, 34–35).

29. There is no evidence that plaintiff's application for Retiree Plan coverage was treated differently than any other former participant similarly situated. The testimo-

ny establishes consistent treatment of persons similarly situated to plaintiff. (R. 25–26). Plaintiff presented no evidence and elicited no testimony to rebut this finding.

30. The Welfare Fund trustees have not acted in bad faith or in an arbitrary or capricious manner in denying plaintiff's Retiree Welfare Plan application.

31. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

## II. CONCLUSIONS OF LAW

On the above and foregoing findings of fact, the Court makes the following conclusions of law:

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the complaint is brought under 29 U.S.C. § 1132(e)(1). Venue is proper in this district under 28 U.S.C. § 1391(b).

2. A district court has a limited standard of review of trustees' determinations and interpretations concerning benefit eligibility and coverage issues. A decision by the trustees may be overturned only if it was arbitrary and capricious in light of the language of the Plan. *Wardle v. Central States Pension Fund,* 627 F.2d 820, 823–24 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

3. It is plaintiff's burden to prove that the Trustees' decision was arbitrary and capricious. *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 (5th Cir.1979). As noted above, plaintiff has offered no evidence and elicited no testimony to rebut the finding that the Trustees have consistently applied the same rule to applicants similarly situated to the plaintiff: the Trustees apply the Plan in effect when a particular individual's participation in the Fund ceased. In addition, plaintiff has not shown the rule itself to be anything other than logical and fair.

4. The Court concludes that the application of the June 1, 1981 Plan of Benefits to the plaintiff's October 1982 Retiree Benefit Plan application was proper and fair, and not arbitrary and capricious. *Cf. Lehner v. Crane Co.,* 448 F.Supp. 1127, 1128, 1134–36 (E.D.Pa.1978) ("plaintiff's eligibility for benefits is to be determined by the plan in effect when his employment ended and not by the plan which became effective thereafter.") Since it is undisputed by the parties, the Court also finds that plaintiff's application for Retiree Welfare Fund coverage was properly denied under the provisions of the June 1, 1981 Plan of Benefits.

5. Plaintiff's estoppel argument is rejected in light of *Reiherzer v. Shannon,* 581 F.2d 1266, 1267 fn. 1 (7th Cir.1978). The vast majority of courts considering this argument have rejected the use of estoppel principles in cases of this sort. *Id.*

6. Even if the estoppel doctrine was accepted in this type of case, plaintiff has failed to show any information on which he detrimentally relied. Plaintiff's contention that Ewing initiated and encouraged the idea of early retirement for plaintiff is not supported by the trial testimony. Indeed, Ewing testified and his letter to plaintiff shows that Ewing advised a delay in retirement for plaintiff. In addition, plaintiff never testified that he was misled in any way or detrimentally relied on any information or representation by anyone.

7. Plaintiff could have continued his Welfare Fund coverage under Class S by applying for Class S coverage and making self-contributions prior to September 15, 1981 and continuing to pay until the retirement age of 55. Had he done so, plaintiff would have remained a participant in the Fund and could have qualified for Retiree Welfare Plan coverage under the July 1, 1981 Plan of Benefits, even if the October 1, 1982 Retiree Plan had not been adopted. However, since plaintiff failed to maintain covered employment either under Class S or up to the date of the October 1, 1982 Plan, his termination as a participant in the Welfare Fund on September 15, 1981 was not unfair, arbitrary or capricious.

8. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

### III. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is hereby ordered that:

1. Final judgment is hereby entered in favor of defendant and against plaintiff.

2. Pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, the Court reserves the right to amend the above findings and conclusions or to make additional findings and conclusions upon motion of either party made no later than ten days from entry of this order.

IT IS SO ORDERED.