Arnold SARET, Plaintiff,

v.

TRIFORM CORPORATION, et al., Defendants.

No. 83 C 4650.

United States District Court, N.D. Illinois, E.D.

Aug. 21, 1986.

Rance V. Buehler, Faber & Buehler, West Dundee, Ill., for plaintiff.

Michael P. Fontana, Alan S. Gilbert, Sonnenschein Carlin Nath & Rosenthal, Jay Conison, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff, Arnold Saret (Saret), brought this action against Triform Corp. (Triform), its successor in interest American Hydrau-

lics, Inc. (Hydraulics),[1] its former president, Gerald Buccino (Buccino), and its employee welfare benefit plan, the Triform Employee Benefit Plan (the employee benefit plan or the plan). Plaintiff seeks reimbursement for certain medical expenses based upon his alleged participation in the employee benefit plan. Count I founds recovery upon the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. Counts II and III, respectively, are pendent claims for breach of fiduciary duty and contract. Hydraulics has counterclaimed alleging plaintiff failed to fulfill his duties as its director.

The case was tried before the court on September 18, 1985. At that time, the court issued informal oral findings denying plaintiff's ERISA claim and dismissing his pendent claims for lack of jurisdiction. Hydraulics' counterclaim was also denied. Per the court's order, the parties have submitted written findings of fact and conclusions of law. In addition, the defendants move for an award of attorney's fees.

I. *Findings of Fact*

Plaintiff has considerable experience in the insurance business. His particular expertise is in insurance sales and corporate risk management. Plaintiff gained much of this expertise while in Buccino's employ. He acted as risk manager for two businesses, Interstate United and Goldblatt Brothers, in which Buccino was the chief financial officer. While at Goldblatt Brothers, plaintiff managed the employee benefit department for several months. In that position, he administered an employee health plan similar to Hydraulics' employee benefit plan.

Buccino has been in the business of operating financially troubled businesses for many years. In September of 1981, Buccino's company, G.B. Acquiring Corp., acquired Hydraulics, which had been reorganized under Chapter 11 of the Bankruptcy Code. Hydraulics manufactures hydraulic tube and hose products, chiefly for the farm equipment industry.

Buccino offered plaintiff, his friend and former business associate, a directorship with Hydraulics. In this position, plaintiff would review and determine the adequacy of Hydraulics' insurance plans. Early on in their discussions, plaintiff asked Buccino for coverage under the plan. Buccino, unaware that plaintiff could not be covered by the plan, agreed to this request.[2]

Shortly thereafter, plaintiff informed Buccino that coverage was available only for full time employees. Buccino directed plaintiff to investigate whether arrangements could be made to secure his participation in the plan.

Plaintiff completed and submitted the necessary documentation and was enrolled in the plan. In an apparent attempt to satisfy the eligibility requirements, plaintiff listed his occupation as risk manager, rather than director, on the registration card.

Plaintiff received a copy of the Summary Plan Description, which described the plan and its eligibility requirements. The plan, instituted in January, 1981, was partially self-funded. Hydraulics paid the first $10,000 of a claim, and any excess was covered by a "stop-loss" insurance policy issued by Lafeyette Life Insurance Company. The Lafeyette policy also provided life, accident and disability coverage. Hydraulics created a segregated account to hold the plan's assets. This account was funded, however, only when claims arose and payments were to be made. It contained no reserve. When claims were to be paid, Hydraulics transferred funds from its general operating account to the segregated account. Buccino and Hydraulics' treasurer and comptroller, Barry Swenson, directed these transfers.

As explained above, eligibility was limited to full time employees with at least

---

1. Triform changed its name to American Hydraulics, Inc. in 1983. Both names refer to the same corporation. The court, therefore, will refer to that corporation as Hydraulics throughout.

2. In reliance upon this representation, plaintiff did not secure other insurance.

three months on the job. Part time and temporary employees were not eligible, nor were employees working less than 30 hours per week. Plaintiff read this booklet more than once. He also became familiar with the plan through his overall review of Hydraulics' insurance program.

In the fall of 1981, plaintiff began part time work for Hydraulics. As a director, he received a quarterly $500 fee, but no other salary. Hydraulics neither directed plaintiff in the performance of his duties, nor supplied him with an office or equipment.

Plaintiff reviewed Hydraulics' insurance plans. At a meeting with Buccino, he explained the company's liability insurance was due to expire and offered to supervise the bidding on a new policy. He described the employee benefit plan as adequate and recommended its continuation. Based upon this recommendation, Buccino kept the plan in force.

In October of 1981, plaintiff's daughter received medical treatment for an injured hand. Plaintiff's claim under the plan for this treatment was paid in full.

In 1982, Hydraulics suffered business reverses, mainly due to the recession in the farm equipment industry. As a result, Hydraulics experienced a cash crisis and was unable to meet its obligations. It implemented cost cutting measures to keep the business afloat. Buccino asked plaintiff to investigate possible alternative insurance plans to cover Hydraulics' now reduced work force. Plaintiff was uncooperative, apparently out of fear that a new plan might not cover his pre-existing heart condition.[3]

In June, 1982, in the midst of this crisis, plaintiff suffered a heart attack and was hospitalized. He submitted claims under the plan for his medical expenses. Based upon their prior conversation, Buccino knew plaintiff was not properly covered. In addition, due to its ever worsening financial condition, Hydraulics was unable to fulfill its payment obligations under the plan. Buccino, in good faith, negotiated

extended payment schedules with some creditors, but some claims were only partially paid. Buccino informed plaintiff of this situation. Through numerous phone calls, plaintiff importuned Hydraulics to pay his claim. Faced with this pressure, and in light of the fact that plaintiff was a director and personal friend, Buccino agreed that Hydraulics would make arrangements to pay plaintiff's claim. Due to its financial troubles, however, Hydraulics paid only $500 of plaintiff's claim, leaving an outstanding balance of $7,133.70.

In the fall of 1982, Buccino sought plaintiff's vote on a board resolution authorizing the issuance of new preferred stock to Hydraulics' major creditor. Again, plaintiff was uncooperative, this time out of concern that he would incur personal liability for the business's failure. In March of 1983, plaintiff resigned.

## II. Conclusions of Law

### A. Count I

Hydraulics' employee benefit plan is an employee welfare benefit plan within the meaning of ERISA. 29 U.S.C. § 1002(3). The court's jurisdiction over plaintiff's ERISA claim is provided by 29 U.S.C. § 1132(e).

■ Plaintiff contends Buccino owed the plan's participants a duty to establish and implement an adequate funding policy therefor, and failed to do so. Standing to raise these claims is restricted to the plan's participants. 29 U.S.C. § 1132(a)(1). By its terms, the plan limits participation to full time employees. Plaintiff neither worked full time, nor was an employee. About this, there is no dispute.

Instead, plaintiff contends the plan's eligibility requirements may be and were amended by Hydraulics' conduct, i.e. its representations of coverage, and its partial payment of plaintiff's claim. He explains this argument in terms of estoppel and waiver. That is, plaintiff contends Hydraulics is estopped from denying his eligibility,

---

3. In September, 1982, Hydraulics substituted insurance coverage for the self-funded portion of the plan. The plan itself, however, remained in effect.

and/or has waived the right to enforce the plan's eligibility requirements. The cases which have considered whether conduct may amend an ERISA plan have done so in terms of estoppel. This court will also consider plaintiff's argument in terms of estoppel, with the understanding that its analysis is equally applicable to plaintiff's waiver theory.

The Seventh Circuit has not expressly decided whether eligibility under ERISA may be secured by estoppel. In *Reiherzer v. Shannon*, 581 F.2d 1266, 1267 n. 1 (7th Cir.1978), however, the court expressed "serious doubts" over the extension of eligibility through estoppel. The court noted the use of estoppel could seriously undermine the requirement that ERISA plans be reduced to writing. 29 U.S.C. § 1102(a)(1). Other circuits have expressed similar concerns. *See e.g. Aitken v. IP & CGU-Employer Retirement Fund*, 604 F.2d 1261, 1266–1267 (9th Cir.1979); *Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir.1976), *Moglia v. Geoghegan*, 403 F.2d 110, 117 (2d Cir.1968), *cert. denied* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969).

■ The writing requirement is a central feature of ERISA, not a mere technicality. It secures to the plan's participants and administrators a clear understanding of their rights and obligations. It protects the plan's actuarial viability by setting forth the terms under which benefits may be paid. *See Cummings v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 388 (7th Cir.1986). More generally, the writing requirement protects ERISA plans from the sort of corruption fostered by private verbal agreements. The validation and enforcement of such agreements through estoppel thus conflicts with ERISA's basic purpose and design. For

the foregoing reasons, the court concludes estoppel and waiver are inapplicable in this context. *See accord Taylor v. Suburban Teamsters of Northern Illinois Fringe Benefit Funds*, 613 F.Supp. 205, 209 (N.D. Ill.1985).[4]

■ In addition, the evidence supports neither a finding of estoppel nor waiver. Estoppel requires a showing that plaintiff reasonably relied upon Hydraulics' representations. Yet, plaintiff had many years experience in the insurance business. He had administered a similar plan at Goldblatt Brothers, and was intimately familiar with Hydraulics' plan. Indeed, plaintiff knew of his ineligibility. He told Buccino as much in 1981.[5] In short, plaintiff was not entitled to rely on Hydraulics' representations concerning payment of his medical bills. He knew better.

■ As regards plaintiff's waiver theory, the evidence does not show an intention on Hydraulics' behalf to waive its rights under the plan. The decision to pay plaintiff's claim was based on loyalty and friendship, apart from the dictates of the plan.

■ Finally, granting, *arguendo*, plaintiff's participation in the plan, there is no proof that Hydraulics' funding policy was inadequate. The short answer to plaintiff's claim is that the payment of claims out of current revenues does not violate ERISA. *See Pierce v. NECA-IBEW Welfare Trust Fund*, 488 F.Supp. 559, 564 (E.D.Tenn.1978), *affirmed* 620 F.2d 589 (6th Cir.), *cert. denied* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980); *see also* 29 C.F.R. 2509.75 at FR–5. Plaintiff argues this determination must be made on a case by case basis. Yet, he suggests no alternative funding policy

---

**4.** In *Torrence v. Chicago Tribune Co.*, 535 F.Supp. 748 (N.D.Ill.1982), my colleague, Judge Aspen, allowed the application of estoppel to ERISA. Therein, the claimant was denied pension benefits even though contributions had been made on his behalf. Thus, the benefit payments were merely reimbursements for prior contributions. The court found this significant because, under those circumstances, benefit payments did not jeopardize the plan's actuarial health. The instant case is distinguishable

from *Torrence* on its facts. No such contributions were made by plaintiff. Furthermore, with numerous claims outstanding, payment to plaintiff would adversely affect those properly covered by the plan.

**5.** This finding is further buttressed by the fact that plaintiff listed his occupation as risk manager, rather than director, on the registration card.

which would have insulated the plan from the business reverses Hydraulics suffered. The evidence shows Buccino made good faith efforts to pay Hydraulics' debts but, due to the business's demise, was unable to do so. The court concludes Buccino's actions were appropriate under the circumstances and breached no duty owed the plan's participants.

For the foregoing reasons, plaintiff's ERISA claim as stated in Count I is denied.

### B. *Counts II and III*

 Having dismissed plaintiff's only federal claim, the court dismisses his pendent claims as stated in Counts II and III as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### C. *Hydraulics' Counterclaim*

 Hydraulics pressed its counterclaim with little vigor at trial. Indeed, counsel indicated he would not pursue the counterclaim unless plaintiff was successful in pressing his claims. Transcript of Proceedings at 16. At any rate, the evidence does not support the counterclaim. Plaintiff reviewed Hydraulics' insurance programs as he was obliged to do. While plaintiff was somewhat uncooperative with Buccino's efforts to save the company, his conduct did not amount to a breach of his contractual or fiduciary duties. Accordingly, Hydraulics' counterclaim is denied.

### III. *Attorney's Fees*

 The defendants have prevailed with respect to plaintiff's ERISA claim. Under section 1132(g)(1) of ERISA, the court, in its discretion, may award attorney's fees to such prevailing parties. As the Seventh Circuit has explained, fees shall be awarded, "unless ... the [losing party's] position was substantially justified or ... special circumstances make an award unjust." *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 830 (7th Cir. 1984). Section 1132(g)(1) thus creates a "modest presumption (modest because of the 'special circumstances' exception) in favor of [a fee award] unless the loser's position, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious." *Id.*

Plaintiff argues his estoppel theory provides a solid basis for his claim. While the court rejected this argument, *Torrence, supra* n. 4, provides support for plaintiff's position. Even so, the estoppel theory, could only secure plaintiff standing. He still had to show a violation of ERISA to prevail on the merits. Plaintiff asserted Buccino failed to provide proper funding for the plan. The strength of this claim is difficult to gauge. Plaintiff presented precious little evidence and argument in its support. He showed no violation of ERISA. Nor did he suggest an alternative funding policy. On the record before it, the court concludes plaintiff's position lacked a solid legal basis.

It remains to consider whether special circumstances militate against a fee award. In *Bittner,* the court fleshed out this exception:

> Although the plaintiff's good faith is not alone enough ... it may in a special case be evidence of exceptional circumstances that would make a fee award unjust ... Another possible factor is the plaintiff's ability to pay an award; if he cannot pay one without great hardship, and he brought the case in good faith though without substantial justification, it may be unjust to award a fee to the defendant.

*Bittner,* 728 F.2d at 830.

The court has no doubt that plaintiff brought this suit in good faith. Furthermore, the trial record indicates plaintiff is in difficult if not dire financial straits. Faced with the burden of compensating his own attorney, plaintiff would indeed be hard pressed to pay defendants' attorneys as well.

Equitable considerations also militate against a fee award. While plaintiff has not proffered a meritorious legal basis to support his claim, there is no doubt that Hydraulics agreed to arrange for the payment of his medical expenses. In this circumstance, it would be inappropriate to

foist defendants' attorney's fees upon plaintiff. For the foregoing reasons, defendants' motion for attorney's fees is denied.

## IV. *Conclusion*

Plaintiff is not entitled to the relief sought in Count I, and therefore, said claim for money damages is denied. Inasmuch as plaintiff's only federal claim has failed, the court lacks jurisdiction over his pendent claims stated in Counts II and III. Accordingly, those claims are dismissed as well. Hydraulics counterclaim is not supported by the evidence and, therefore, is dismissed. Finally, the defendants' motion for attorney's fees is denied.