Robert **SCHWARTZ**, M.D., as President of the Committee of Interns and Residents, et al., Plaintiffs,

v.

**INTERFAITH MEDICAL CENTER** and Theodore Jamison, Defendants.

No. 89 C 1583.

United States District Court, E.D. New York.

June 27, 1989.

---

Lewis, Greenwald, Kennedy & Lewis, P.C. (Thomas M. Kennedy, of counsel), and Harry Franklin, New York City, for plaintiffs.

Cullen & Dykman (Cynthia Boyer Okrent, of counsel), Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs, resident doctors at defendant Interfaith Medical Center (the Hospital), brought this action seeking, among other things, equitable relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1982 & Supp. IV 1986), and the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 *et seq.* (Supp. IV 1986), against the Hospital and its president, defendant Jamison.

Plaintiffs have moved for a preliminary injunction restraining the Hospital from refusing to administer its self-insured major medical and dental employee welfare benefit plan in accordance with ERISA.

### I.

The affidavits and exhibits submitted on this motion show the following.

The Hospital is a 620–bed non-profit hospital providing acute care and other medical services to Bedford–Stuyvesant and surrounding low-income neighborhoods. Since its establishment in 1983 it has been in financial difficulty. It is dependent on reimbursement from Medicaid and Medicare and on state subsidies to meet its costs.

The Hospital says it receives about $1,300,000 per week from Medicaid, $800,000 every other week from Medicare, $200,000 per week from Blue Cross/Blue Shield, and $80,000 per week from commercial insurers. Distribution of $18,000,000 in subsidies for 1989 from New York State is not scheduled to begin until July 1989. As of May 31, 1989 the Hospital had expended about $7,500,000 caring for patients who had neither health insurance nor the means to pay for treatment.

Plaintiff Schwartz is the president of the Committee of Interns and Residents (CIR), the recognized collective bargaining representative of the interns, residents, and fellows of the Hospital. CIR is a party to a collective bargaining agreement (the Agreement) with the Hospital effective between January 1, 1987 and December 31,

1989. The other plaintiffs are resident doctors employed by the Hospital. They bring the action on their own behalf and on behalf of those similarly situated.

The Agreement obligates the Hospital to provide on a non-contributory basis hospital, medical-surgical, major medical, and dental insurance coverage for its doctors. The Major Medical coverage features 80/20 coinsurance for the first $2,000 in claims and 100% for claims over $2,000, a $1,000,-000 maximum, and an annual deductible of $100 per individual and $300 per family. The dental plan covers 50% of reasonable and customary charges with a $25 deductible and a $1,000 maximum. The Hospital must provide (a) copies "of the policies and explanatory booklet, if any, providing such coverage to the CIR" as soon as available to the Hospital and (b) "certificates of insurance" to each staff officer within thirty days of employment.

Despite these provisions, which contemplate that the Hospital would provide the benefits through an insurance carrier, the Hospital on April 13, 1988 advised its employees, including the doctors, that effective March 1, 1988 it had terminated all insurance contracts with Phoenix Mutual Life Insurance Company, its group health insurer, and would now self-insure employees' medical and dental benefits plan. This memorandum, sent one and a half months after the termination, stated that the Hospital was doing what it could "to correct the poor cash flow which made this happen," encouraged the employees to use the Hospital's facilities without charge "until we can restore coverage," and directed the employees who received care to submit claims for reimbursement to the Hospital's "Benefit Office."

The Hospital has not replaced the insurance carrier and admits that a backlog of some $70,000 in unpaid medical claims submitted as long ago as September 1988 has accumulated. It says it is paying the valid outstanding claims at the rate of $7,000 per week and will step up payments to $12,000–17,000 per week as soon as its distributions from New York State begin so as to finish paying the backlog within five months.

Plaintiffs assert that unpaid claims far exceed the amount admitted and that the Hospital has not paid some claims submitted as early as July 1988.

The Agreement provides for arbitration of "disputes regarding the interpretation or application of the terms of this Agreement." Pursuant to that clause CIR has demanded arbitration to determine whether the Agreement compels the Hospital to provide medical and dental coverage through an insurance carrier. The demand states that the Hospital "is violating" the Agreement "by not providing insurance coverage as described in" the Agreement and "by failing to pay the claims appropriately or at all."

The remedy sought in arbitration is a direction that the Hospital "obtain coverage for benefits per" the Agreement "through a reputable insurance carrier," that "all claims be paid as before the violation and promptly," and that "housestaff otherwise be made whole."

In this action plaintiffs seek not third-party insurance coverage but to compel the Hospital to comply with ERISA and COBRA in administering its self-insured plan. They allege that the Hospital has violated ERISA by not creating a trust to hold the plan assets, by not appointing plan trustees, by not complying with ERISA's reporting provisions, by not providing procedures for claims and appeals, and by not sequestering sufficient assets to pay accumulated and projected claims. They further allege that both the Hospital and Jamison have violated ERISA by failing to act solely in the interest of the beneficiaries of the plan, to exercise the skill and care of a prudent person, and to keep separate the assets of the plan.

The complaint and moving papers also assert claims under COBRA, but at oral argument plaintiffs' counsel said that plaintiffs preferred to pursue only their ERISA claims on this motion.

Defendants assert that they are exempt from the funding and trust establishment requirements of ERISA and that plaintiffs must await the outcome of the arbitration before seeking relief in this court.

## II.

■ Under 9 U.S.C. § 3, if a suit is brought in this court "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court shall, upon application by a party, stay the action until completion of the arbitration. Defendants claim that the court must stay this action under that section because "plaintiffs' basic claims are effectively the same claims" raised in the arbitration, plaintiffs seek money damages in both fora, and if plaintiffs prevail in the arbitration this action will become moot.

It is true that if CIR wins the arbitration, as it plainly should, and the Hospital reinstates third-party group health insurance, plaintiffs will have no need to pursue this action. Neither the parties nor the claims in the two proceedings, however, are the same. CIR sought the arbitration; it is not a party to this action. The arbitration seeks to compel provision of third-party insurance; this action seeks to compel the self-insured plan's compliance with ERISA.

Moreover, section 3 of title IX covers only "any issue referable to arbitration under an agreement in writing." The Agreement provides for arbitration of "disputes relating to the interpretation or application of the terms of this Agreement." The dispute involved in this lawsuit does not relate to the interpretation or application of the Agreement's terms. The Agreement does not provide for a self-funded medical and dental plan. Plaintiffs' claim is not that the Hospital is violating the Agreement (although it clearly is) but that it is violating ERISA.

Defendants claim that even apart from title IX ERISA requires plaintiffs to "exhaust their administrative remedies" before bringing this action. The cases defendants cite for this proposition involve disputes over denials of benefits clearly committed to administrative claims-resolution procedures under a plan governed by ERISA. *See, e.g., Denton v. First Nat'l Bank,* 765 F.2d 1295 (5th Cir.1985); *Kross v. Western Elec. Co.,* 701 F.2d 1238 (7th Cir.1983); *Sample v. Monsanto Co.,* 485 F.Supp. 1018 (E.D.Mo.1980).

Plaintiffs do not contest a denial of benefits under a plan but the entire structure of the plan. Indeed, one of plaintiffs' claims is that the Hospital is violating ERISA by failing to provide any administrative claims-resolution procedures. There are thus no administrative remedies for plaintiffs to exhaust.

Neither the pending arbitration nor plaintiffs' failure to exhaust non-existent administrative remedies prevents this court from taking jurisdiction of this action.

## III.

To get a preliminary injunction plaintiffs must show (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See, e.g., American Postal Workers Union v. United States Postal Serv.,* 766 F.2d 715, 721 (2d Cir.1985) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979)), *cert. denied,* 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986).

### A. *Likelihood of Success on the Merits*

The facts relating to the structure and administration of the Hospital's self-insured benefits plan are essentially undisputed. Defendants agree that no trust has been created, no trustee appointed, no summary plan description supplied, no review procedure implemented, and no funds sequestered. Plaintiffs' likelihood of success on the merits therefore hinges on whether ERISA entitles them to the relief they seek.

■ The purpose of ERISA is "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). ERISA does not mandate that employers provide any particular benefits, *id.* at 91, 103 S.Ct. at 2897, but having decided to provide an employee welfare benefit plan covered by the statute, the Hospital

must operate and administer the plan in accordance with ERISA.

The Hospital's plan is an "employee welfare benefit plan" as defined in § 3(1)(A) of ERISA, 29 U.S.C. § 1002(1)(A). It is therefore exempt from ERISA's vesting, participation, and funding requirements, *see* §§ 201(1), 301(a)(1), 29 U.S.C. §§ 1051(1), 1081(a)(1), and need not hold its assets in trust, *see* § 403(b)(4), 29 U.S.C. § 1103(b)(4).

The plan is, however, subject to ERISA's fiduciary requirements. *See* § 404(a), 29 U.S.C. § 1104(a). It must "be established and maintained pursuant to a written instrument" providing for "one or more named fiduciaries" with "authority to control and manage the operation and administration of the plan." § 402(a)(1), 29 U.S.C. § 1102(a)(1). It must supply plan participants with a summary plan description. *See* §§ 101(a)(1), 102, 29 U.S.C. §§ 1021(a)(1), 1022.

The plan must "describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan," "provide a procedure for amending such plan," and "specify the basis on which payments are made to and from the plan." § 402(b)(1)–(4), 29 U.S.C. § 1102(b)(1)–(4).

It must "establish and maintain a reasonable claims procedure," 29 C.F.R. § 2560.503–1(b), and "a procedure by which a claimant ... has reasonable opportunity to appeal a denied claim ... and under which a full and fair review of the claim and its denial may be obtained." 29 C.F.R. § 2560.503–1(g)(1).

The Hospital's plan is deficient in several respects.

First, the Hospital has not established its self-funded plan pursuant to a written instrument as required by § 402(a)(1). "The writing requirement is a central feature of ERISA, not a mere technicality. It secures to the plan's participants and administrators a clear understanding of their rights and obligations. It protects the plan's actuarial viability by setting forth the terms under which benefits may be paid.... [and] protects ERISA from the sort of cor-

ruption fostered by private verbal agreements." *Saret v. Triform Corp.*, 662 F.Supp. 312, 316 (N.D.Ill.1986).

The health benefits provisions of the Agreement and the insurance contracts with Phoenix Mutual Life Insurance Company do not satisfy this requirement. Those documents relate to a different plan from that now in effect. An insured plan need not be established pursuant to a written instrument and need not have a named fiduciary, § 403(b)(1), 29 U.S.C. § 1103(b)(1), whereas the self-insured plan must. Nearly every essential feature of the self-insured plan, from the allocation of responsibility to the basis on which payments are made to the claims and review procedures, is or may be different under the self-insured plan from the insured plan. Without a written instrument disclosing the "requisite features" of the plan under § 402(b), 29 U.S.C. § 1102(b) and the supporting regulations, plaintiffs can have no "clear understanding of their rights and obligations." *Saret, supra*, 662 F.Supp. at 316.

Second, the Hospital has not supplied plan participants with a summary plan description. Defendants claim that they have 210 days from the end of the calendar year in which they started self-insuring to provide a description of the new plan, citing § 104(b)(1), 29 U.S.C. § 1024(b)(1), and 29 C.F.R. § 2520.104b–3.

That section and regulation apply to "material modifications to the plan." The Hospital's change from an insured to a self-insured plan is more, however, than a "material modification." Other than the scope of the benefits provided, nearly all of the information that a summary plan description must contain under § 102(b), 29 U.S.C. § 1022(b), and 29 C.F.R. § 2520.102–3 is or may be different under the two plans. That information includes "the source of financing of the plan and the identity of the organization through which benefits are provided," "the procedures to be followed in presenting claims for benefits," and "the remedies available ... for the redress of claims which are

denied in whole or in part." § 102(b), 29 U.S.C. § 1022(b).

Participants are entitled to know how the self-insured plan operates. That is the purpose of requiring a summary plan description "written in a manner calculated to be understood by the average plan participant." § 102(a)(1), 29 U.S.C. § 1022(a)(1). Plaintiffs can learn virtually nothing about the self-insured plan by reading summary plan descriptions relating to the insured plan.

The Hospital must supply a summary plan description within 120 days after the plan becomes subject to ERISA's disclosure requirements. 29 C.F.R. § 2520.104b–2. The plan began on March 1, 1988. The summary plan description is thus long overdue.

Third, the Hospital has not established claims and review procedures. Its memorandum dated April 13, 1989 describes the claims procedure as follows: "[P]lease submit your claims for reimbursement for previously covered services to the Benefit Office.... We will make every effort to reimburse you or the provider as quickly as possible." This is not a "reasonable claims procedure" as defined in 29 C.F.R. § 2560.503–1(b), because, among other things, it does not provide for "informing participants in writing, in a timely fashion," of the time limits for deciding a claim, appealing a denial, and deciding an appeal. 29 C.F.R. § 2560.503–1(b)(iv). Neither that memorandum nor any other document establishes or even mentions a review procedure.

Plaintiffs' greatest grievance, however, concerns not these violations but the Hospital's failure to sequester from its general assets and hold in trust funds for the payment of claims. Plaintiffs contend that this failure violates the fiduciary requirements of § 404, 29 U.S.C. § 1104. Their argument, in substance, is that the Hospital and Jamison, the plan's "*de facto* trustee," are bound by ERISA's "prudent man [sic] standard of care," § 404(a), 29 U.S.C. § 1104(a), to sequester and hold assets in a trust for payment of plaintiffs' claims because the precarious financial situation of the Hospital makes it imprudent to do otherwise.

"[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." § 3(21)(A), 29 U.S.C. § 1002(21)(A). A "person" may be an individual or a corporation. § 3(9), 29 U.S.C. § 1002(9). Both the Hospital and Jamison are therefore fiduciaries to the plan.

As fiduciaries they must discharge their duties with respect to the plan "solely in the interest of the participants and beneficiaries" "for the exclusive purpose of ... providing benefits to participants and their beneficiaries" "with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 404(a)(1)(A), (B).

This "prudent man standard of care" relates primarily to the management of plan assets. *See, e.g.,* S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1973 U.S. Code Cong. & Admin.News 4838, 4839 ("The bill prescribes new and stringent rules of conduct required for trustees and fiduciaries administering employee benefit funds...."); *id.* at 4866 ("the fiduciary provisions apply only to those funds which leave assets at risk"); 120 Cong.Rec. S 15737 (Aug. 22, 1974) (statement of Sen. Williams), *reprinted in* 1973 U.S.Code Cong. & Admin.News 5177, 5186 ("the legislation imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets"). Virtually all of the regulations under § 404, for example, concern such matters as "investment duties." *See* 29 C.F.R. Part 2550. The fiduciary requirements thus impose minimal burdens on fiduciaries to unfunded, non-vesting welfare

benefit plans like the Hospital's which have no plan assets to manage.

In addition to their responsibilities to the plan, defendants have a responsibility to the Hospital to keep it solvent. Where an employer and its officer "wear two hats," they "assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Amato v. Western Union Int'l,* 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. denied,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

Defendants nonetheless owe plaintiffs a duty " 'to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as' " plan fiduciaries. *Id.* at 1417 (quoting *Donovan v. Bierwith,* 680 F.2d 263, 271 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982)).

Defendants cannot both satisfy their duty to keep the Hospital afloat and perform their fiduciary responsibilities to the plan participants with the single-mindedness mandated by § 404. The Hospital does not have enough cash to meet its current obligations. Its officers have no choice but to defer payments to as many creditors as possible. It is too much to expect of mere mortals that they will be able to reconcile that need with their duty under ERISA to act solely for the benefit of plan participants. Section 404 therefore requires them to name a neutral administrator to oversee the affairs of the plan during this troubled period. *Cf. Donovan, supra,* 680 F.2d at 276.

Plaintiffs' situation illustrates why defendants' conflict of interest is untenable. Defendants have allocated a meager $7,000 per week for tardy payment of plaintiffs' claims. If the Hospital's disbursements from the state are delayed defendants may cut back payments further or perhaps go into bankruptcy. Indeed, the temptation is great for defendants to treat plaintiffs as, in plaintiffs' phrase, "creditors of first resort." Such treatment would obviously violate defendants' fiduciary obligation to administer the plan solely in the interest of participants and beneficiaries. ERISA therefore requires the appointment of someone above the fray who is not charged simultaneously with the irreconcilable responsibility of keeping the Hospital out of hock.

It does not follow, however, that defendants violated their fiduciary duty to plaintiffs by failing to sequester funds for payment of plaintiffs' claims or to create a trust to hold plan assets. In enacting ERISA, Congress apparently determined that subjecting employee welfare benefit plans to the same vesting, funding, and trust requirements as pension plans would be so costly as to discourage employers from providing welfare benefits at all. *See, e.g.,* H.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1973 U.S.Code Cong. & Admin.News 4639, 4639–40.

Congress obviously knew that those features would be most valuable when the general assets of the employer were insufficient to satisfy plan participants' claims. This court may not impose such requirements when Congress has declined to do so, no matter how useful plaintiffs would find them. *See In re White Farm Equip. Co.,* 788 F.2d 1186, 1193 (6th Cir.1986).

Some courts have held that such requirements may arise from a contract, such as a collective bargaining agreement, between the employer and the participants. *See, e.g., Anderson v. Alpha Portland Indus.,* 836 F.2d 1512, 1516 (8th Cir.1988), *cert. denied sub nom. Anderson v. Slattery Group, Inc.,* —— U.S. ——, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *In re White Farm Equip. Corp., supra,* 788 F.2d at 1193; *cf. Amato, supra,* 773 F.2d at 1419–20 (employees may be third-party beneficiaries of agreement providing that employee benefits shall not be reduced).

The issue before this court is not, however, whether the Agreement entitles defendants to terminate the insured plan and substitute the self-funded plan. Interpretation of the Agreement is within the jurisdiction of the arbitrator. Nor is the issue whether such a termination, if permitted

under the Agreement, is permitted under ERISA. The parties may raise that issue, if necessary, after the arbitration.

The court may decide only what ERISA requires of the new plan. Plaintiffs have not directed the court to any agreement relating to that plan under which defendants bound themselves to sequester funds or to hold plan assets in trust. *See McNabb v. Michigan Consol. Gas Co.,* 656 F.Supp. 866, 868 (E.D.Mich.1987) (without definite promise from employer to continue benefits, court cannot bind employer). The court will not rewrite ERISA to craft such an obligation out of the statute's general fiduciary requirements, which are directed principally at the standard of care for managing plan assets, when Congress has not done so.

This holding does not leave plaintiffs without a remedy if defendants should refuse to pay their claims or unduly delay payment. If a claim is not paid "within a reasonable period of time," defined as "90 days after receipt of the claim by the plan" except in special circumstances, it "shall be deemed denied," and the claimant may seek review of the denial as called for in the plan. 29 C.F.R. § 2560.503–1(e)(2), (3).

The claimant must ordinarily receive a decision on review within 60 days of the plan's receipt of the request for review and in no event later than 120 days after receipt. 29 C.F.R. § 2560.503–1(h)(1)(i).

The Hospital admits that some of their claims have gone unpaid since September 1988. Since there is no review procedure under the plan, plaintiffs may bring suit in this court under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), on all claims unpaid for more than 90 days.

■ In sum, the court finds that plaintiffs have shown a likelihood of success on the merits as to defendants' failure to create a written instrument, their failure to supply a summary plan description, their failure to create claims and review procedures, and their failure to appoint a neutral administrator.

They have not shown such a likelihood of success as to defendants' failure to seques-ter assets or to create a trust. But since there is little authority on those questions, and plaintiffs may be able to provide the court with greater guidance in the course of the litigation than given by their sketchy memorandum on this motion, they have at least established that there are sufficiently serious questions going to the merits to make those issues a fair ground for litigation.

### B. *Balance of Hardships*

The court cannot say, however, that the balance of hardships "tips decidedly in the moving party's favor."

If plaintiffs do not obtain injunctive relief, they may still get a judgment for wrongfully denied or unpaid claims.

The Hospital, which performs a vital public service to a needy community, is in desperate straits. Although plaintiffs' outstanding claims represent only a tiny fraction of the Hospitals' weekly cashflow, requiring defendants to set aside funds for payment of those claims may upset its precarious finances, imposing a great hardship not only on the Hospital but on the community it serves.

Plaintiff's motion is therefore denied to the extent that it seeks sequestration of funds for payment of their claims and creation of a trust to hold plan assets.

### C. *Irreparable Harm*

Defendants argue that plaintiffs cannot establish irreparable harm from continuation of its alleged ERISA violations because they can be made whole by damages.

Without a written instrument and summary plan description, however, plaintiffs do not know what their rights are under the plan. Unless the Hospital complies with ERISA's disclosure requirements plaintiffs may unwittingly forfeit benefits to which they are entitled. *Cf.* H.Rep. No. 533, *supra,* 1973 U.S.Code Cong. & Admin. News at 4646 ("It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits" without disclosing those conditions.).

Without claims and review procedures, plaintiffs do not know how to support their claims, when to expect payment, or the reasons for denials of payment.

Without a neutral administrator, assets from the general assets of the corporation that such an administrator could apply to plaintiffs' claims may be diverted to the Hospital's other creditors.

Most importantly, if the Hospital goes into bankruptcy, plaintiffs may never obtain the monetary relief to which they are entitled. *See Drobbin v. Nicolet Instrument Corp.*, 631 F.Supp. 860, 912 (S.D.N.Y. 1986) (citing *Teamsters Freight Local Union No. 480 v. Southern Forwarding Co.*, 424 F.Supp. 11, 13 & n. 13 (M.D.Tenn. 1976)).

The court therefore grants plaintiffs' motion for a preliminary injunction restraining defendants from:

(a) failing to establish and maintain the plan pursuant to a written instrument;

(b) failing to name one or more fiduciaries to control and manage the plan;

(c) failing to supply a summary plan description;

(d) failing to provide a claims procedure;

(e) failing to provide a review procedure; and

(f) failing to appoint a neutral administrator.

The Hospital shall have 30 days to bring the self-insured plan in compliance with this order.

The court recognizes that this relief is in the nature of a "mandatory" injunction—that is, it demands more than maintenance of the status quo during the litigation—and that the burden on plaintiffs is therefore especially heavy. *See, e.g., Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025–26 (2d Cir. 1985). Plaintiffs have made a clear showing, however, that defendants are in flagrant violation of express statutory duties. The court believes plaintiffs are thus entitled to this extraordinary relief.

## IV.

Defendants move under Rule 11 of the Federal Rules of Civil Procedure for attorneys' fees spent defending against plaintiffs' "baseless" claims. The motion is frivolous.

## V.

Plaintiffs' motion for a preliminary injunction is granted in part and denied in part. Defendants' motion for Rule 11 sanctions is denied.