Argued and submitted April 19, 1982, reversed March 2, reconsideration denied April 14, petition for review denied May 17, 1983 (295 Or 31)

DAVIS,
*Respondent,*
*v.*
SIMPSON EMPLOYEES RETIREMENT TRUST,
*Appellant.*

(55020; CA A21788)

659 P2d 990

Jack B. Schwartz, Portland, argued the cause for appellant. With him on the briefs was Newcomb, Sabin, Meyer & Schwartz, Portland.

Dean M. Quick, Albany, argued the cause for respondent. With him on the brief was Weatherford, Thompson, Brickey & Powers, P.C., Albany.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff is a former salaried employe of Simpson Timber Co. (Simpson). Defendant is a retirement trust, the Simpson Employee Retirement Trust (SERT), established pursuant to a pension plan for salaried Simpson employes. In this declaratory judgment proceeding, plaintiff seeks additional years of credit for pension benefit accrual purposes beyond those credited him by the plan directors. The trial court found that, because the SERT plan was ambiguous, it should be construed against its drafters and in plaintiff's favor. It therefore concluded that plaintiff was entitled to 12 additional years of benefit accrual credit. It also awarded plaintiff attorney fees under the Employee Retirement Income Security Act (ERISA), 29 USC §§ 1001-1381 (1976). Defendant appeals, and we reverse.

Plaintiff began working for Simpson when it acquired his former employer, M and M Woodworking Co. (M & M) in August, 1956. The SERT plan as then written did not require that, when Simpson acquired a company, the acquired company's employes be given pension benefit accrual credit for their preacquisition service, but it did authorize Simpson's chairman to elect to fund pension credit for preacquisition service. Article III(6)(c) of the plan provided:

> "Solely for the purpose of this Article III, the word 'Company' shall include * * * any other employer designated as such by the Chairman of the Company from among those in which the Company has acquired a proprietary interest."[1]

M & M was designated under this section immediately upon its acquisition. At the time of acquisition, plaintiff had compiled the following work history:[2]

February, 1935 to February, 1941 - Portland Plylock Corporation;

February, 1941 to September, 1945 - Military Service

---

[1] Including the designated employers within the definition of "Company" secured certain benefits to their employes, including the pension benefit accrual credit at issue here.

[2] From September to June, 1946-47, 1947-48, 1948-49 and 1949-50, plaintiff attended Oregon State College.

October, 1945 to March, 1946 - Portland Plylock Corporation

April, 1946 to September, 1946 - Idanha Veneer Company

June, 1947 to September, 1947 - Summer Work - Oregon State University (then College) and Willamette Industries

June, 1948 to September, 1948 - Summer Work - Idanha Veneer Company

June, 1949 to September, 1949 - Summer Work - Idanha Veneer Company

June, 1950 to January, 1952 - Idanha Veneer Company

January, 1952 to August, 1956 - M and M

On the basis of plaintiff's work history, Simpson's personnel department assigned him a June, 1950, "continuous employment date," corresponding to the date he finished college and started full-time work at Idanha Veneer Co. (Idanha), which had merged with M & M in 1952. In keeping with company policy, plaintiff's continuous employment date determined, among other things, the number of work years with which he would be credited for pension benefit accrual purposes.

In 1976, a comprehensive revision of the SERT plan, necessitated by various provisions of ERISA, was adopted. Following this plan restatement, plaintiff filed a request with defendant for retirement income calculation based on the June, 1950, date originally assigned him. Plaintiff then requested benefit accrual credit beginning with his Portland Plylock employment in 1935, relying on various provisions of the restated plan. Plaintiff's request was denied by the plan administrator. The denial was upheld by the plan directors. Plaintiff brought this proceeding for declaratory judgment pursuant to the provision of ERISA, 29 USC § 1132(a)(1)(B), which authorizes a civil action by a participant in a covered plan to recover benefits or enforce rights under the plan or to clarify rights to future benefits under the plan.

Plaintiff relies on paragraph 7.1E.1 of the restated SERT plan:

"E. * * * Years of Accrual Service shall also include:

"1. Years in the employment of the Company or Other Companies, and the following predecessor companies, other than as an Employee:

"Coast Redwood Company
"Everett Pulp and Paper Company
"Eureka Redwood Lumber Company
"Henry McCleary Timber Company
"Joint Power Operation
"M and M Woodworking Company
"Northern Redwood Lumber Company
"Olympic Plywood Company
"Phoenix Logging Company
"Schafer Bros. Logging Company
"Simpson Industries, Inc.
   "(Incorp. 1942)
"Simpson Lee Paper Company
"South Olympic Tree Farm
"Walling Sash & Door Co., Inc.
   "(Incorp. 1946)
"Walling Sash & Door Co., Inc.
   "(Incorp. 1955).

"provided such Years are completed prior to a Year of Accrual Service as an Employee of the Company, and provided further, that the Participant completed 1600 Hours of Accrual Service in each such Year, which Hours satisfy the definition of Hours in subparagraph 7.1D.6;
* * *."

Defendant argues that paragraph 7.1E.1 was not intended to and did not affect plaintiff's pension benefit accrual date.

Plaintiff argues that paragraph 7.1E.1, along with the break-in-service provisions of the restated plan, entitle him to benefit accrual credit back to 1935, when he went to work for Portland Plylock. He argues that, because M & M is listed in 7.1E.1 as a predecessor company, he must be credited for all his work at M & M and any of its wholly or partly-owned subsidiaries, even before Simpson acquired M & M. Therefore, because Idanha merged with M & M in 1952 and Portland Plylock was partly owned by M & M,[3] he should be credited from the time he first worked for Portland Plylock.

Defendant argues that by listing the predecessor companies in paragraph 7.1E.1, it intended only to insure

---

[3] It is plaintiff's contention that Portland Plylock was a partly-owned subsidiary of M & M, but the record is not clear on this point. Because of our disposition of the case, however, the issue is immaterial.

credit for employment with those companies during the time they were controlled by Simpson. It argues that plaintiff was credited for time worked at M & M and Idanha before Simpson acquired M & M only because Simpson's chairman had previously designated it for pension credit purposes under the discretionary authority of Article III(6)(c), *supra,* retained in the restated plan as paragraph 7.1E.2. Under the break-in-service provisions in effect at the time plaintiff's continuous employment date was first determined, he was entitled to credit only back to the point at which he finished college and began working for Idanha.

The trial court found that the plan, specifically paragraph 7.1E.1, was ambiguous. It concluded, therefore, that the plan should be construed against its drafters and in plaintiff's favor. The court found that plaintiff was entitled to credit back to his Portland Plylock employment in 1935, excluding his college years, apparently applying the break-in-service provisions of the restated plan to reach this result.

■ ■　Even assuming ambiguity in the plan language, it does not necessarily follow that the plan should be construed as plaintiff suggests. Because of the preemption provision of ERISA, 29 USC § 1144(a),[4] the standard of review of the directors' decisions is a question of federal law rather than of state law. *See Peckham v. Board of Trustees, Etc.,* 653 F2d 424 (10th Cir 1981); *Quinn v. Burlington Northern Inc., Etc.,* 664 F2d 675 (8th Cir 1981), *cert den* 456 US 928, 102 S Ct 1976, 72 L Ed 2d 444 (1982); *Landro v. Glendenning Motorways, Inc.,* 625 F2d 1344, 1351 (8th Cir 1980). The trial court applied principles of contract

---

[4] 29 USC § 1144(a) and (c)(1) provide:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employe benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

"* * * * *

"(c) For purposes of this section:

"(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States."

construction to conclude that, because of the ambiguity, the plan must be construed against its drafters, but our review of federal law indicates that federal courts have not adopted that approach. Rather, "the decisions of those empowered with the administration of an employee pension trust [should be] sustained unless arbitrary or capricious or contrary to law." *Smith v. CMTA-IAM Pension Trust*, 654 F2d 650, 654 (9th Cir 1981). Here, the plan gives the directors authority to interpret and construe the plan, to decide questions that may arise regarding the rights of participants and to determine the amount, manner and time for payment of benefits. Article III, Section 3.1 provides:

"The Plan Directors shall have such duties and authority as may be necessary to control and manage the operation and administration of the Plan in accordance with its terms, including, but not by way of limitation, the following:

"A.   To interpret and construe the Plan.

"B.   To decide questions which may arise relative to the rights of Participants, past and present, and their surviving spouses.

"C.   To determine the amount, manner and time for the payment of Benefits.

"* * * * *

"G.   To adopt and make all necessary rules and decisions, provided all such rules and decisions shall be uniformly and consistently applied to all in similar circumstances."

Plaintiff makes no claim that the plan or the directors' decision conflicts with ERISA or is otherwise contrary to law. The issue, therefore, is whether the directors' interpretation of the plan as it applies to plaintiff is arbitrary or capricious.[5] We hold that it was not.

---

[5] Plaintiff, relying on *Landro v. Glendenning Motorways, Inc.*, 625 F2d 1344 (8th Cir 1980), argues that, because the plan is not the result of a collective bargaining agreement, the arbitrary and capricious standard of review should not apply. In *Landro,* the court treated the unilaterally-drawn plan as an adhesion contract to be construed against the plan's drafters. The court observed that ordinarily under ERISA preemption provisions, federal law would determine the standard of review, but because the cause of action arose before ERISA's effective date, the court applied the Minnesota law of adhesion contracts. The court noted in dictum, however, that even under federal law the adhesion contract analysis would apply to pension plans that were not collectively bargained. The Eighth

The language of the plan supports the directors' interpretation. Article 7 provides that an employe's accrual period begins with his or her employment commencement date. The "Employment Commencement Date" is the date on which the employe first performs an hour of accrual service for the company. An "Hour of Accrual Service" means each hour for which the participant is paid by the company. "Company" means Simpson and its subsidiaries or acquired companies designated by the chairman as the "Company" under his Article III(6)(c) or paragraph 7.1E.2 authority. "Employee" means a salaried, nonunion employe of the company. In summary, the plan provides that all hours of work performed as a *salaried* employe for Simpson and/or its subsidiaries will be credited for pension benefit accrual purposes.

In addition, paragraph 7.1E.1 provides that a year of accrual service shall include years in the employment of the company, and the listed predecessor companies, "other than as an Employee," *i.e.,* as other than a salaried, nonunion employe. The final proviso of 7.1E.1 requires that the hours served be those for which the participant is directly or indirectly entitled to payment from Simpson or its subsidiaries. The apparent effect is to insure pension benefit accrual credit for hours worked as a *nonsalaried* employe of Simpson or its subsidiaries, if followed by service as a salaried employe of Simpson or its subsidiaries. At any rate, an employe must work for Simpson or its subsidiaries in order to secure pension benefit accrual credit under this section. Therefore, because M & M was not controlled by Simpson until 1956, Article 7 does not alter plaintiff's benefit accrual date.

Although Article 7 is not a model of clarity, the construction given it by defendant is a plausible one and is in keeping with its prior practice. We are further persuaded by the circumstances under which the plan restatement took place: to make it comply with certain ERISA requirements. Defendant points out, and plaintiff does not dispute,

---

Circuit subsequently repudiated this dictum, *Quinn v. Burlington Northern, Inc., Etc.,* 664 F2d 675, 678 (8th Cir 1981), and reiterated the "arbitrary and capricious" standard as the standard of review. We find no support in federal law for plaintiff's position.

that the ERISA provision that necessitated the change embodied in paragraph 7.1E.1 required only that employes of corporations that are members of a controlled group of corporations be treated as if they were employed by the same employer for purposes of plan participation and the accrual and vesting of retirement benefits. In the parties' view, ERISA required only that Simpson should credit employes for service rendered while their employer was controlled by Simpson and not before.[6]

Plaintiff argues that the plan drafters must have intended to confer an added benefit on employes beyond that required by ERISA, but there is no evidence that that is the case here. The language of the plan, as well as the background against which it was drafted, support the directors' decision. It was error for the trial court to overrule it.[7]

■    Defendant also assigned error to the trial court's award of attorney fees under ERISA, 29 USC § 1132(g)(1), which provided:[8]

"In any action under this title by a participant, beneficiary or fiduciary, the court in its discretion may allow a

---

[6] 29 USC § 1060(c) provides:

"For purposes of sections 1052, 1053, and 1054 of this title, all employes of all corporations which are members of a controlled group of corporations * * * shall be treated as employed by a single employer.* * *"

Department of Labor regulations explain the statute:

"* * * [I]n determining an employee's service for eligibility to participate and vesting purposes, all service with any employer which is a member of the controlled group of corporations shall be taken into account. * * * [I]n determining a participant's service for benefit accrual purposes, all service during periods of participation covered under the plan with any employer which is a member of the controlled group of corporations shall be taken into account." 29 CFR § 2530.210(d)(2).

Plaintiff did not allege and does not argue that the plan violates this or any other provision of ERISA. The parties agree on the meaning of 29 USC § 1060(c), and because the section is relevant here only to explain the intended meaning of the plan, we need express no opinion as to whether the parties' construction of this ERISA provision is correct.

[7] Plaintiff also argued, citing *Falk v. Amsberry*, 290 Or 839, 626 P2d 362 (1981), that defendant's first assignment of error is essentially a challenge to the sufficiency of plaintiff's evidence, and is not properly raised on appeal, because it was not raised in the trial court. Defendant does not challenge the sufficiency of the evidence; it argues that the trial court applied the wrong standard of review to the directors' decision. There is no merit to plaintiff's contention.

[8] 29 USC § 1132(g)(1) has since been amended. The amendment is not relevant to this appeal.

reasonable attorney's fee and costs of action to either party."

Plaintiff does not argue that he is entitled to attorney fees if he does not prevail on this appeal. Although the statute does not expressly limit attorney fee awards to the prevailing party, we have found no case in which the losing party was awarded fees. Consequently, in view of our disposition on the merits, the award of attorney fees was error and is reversed.

Reversed.