Brigette **BRUNDAGE–PETERSON**,
Plaintiff–Appellant,

v.

**COMPCARE HEALTH SERVICES INSURANCE CORP.**,
Defendant–Appellee.

No. 88–3032.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1989.

Decided June 5, 1989.

Michael T. Hopkins, Milwaukee, Wis., for plaintiff-appellant.

W. Charles Jackson, David V. Meany, Michael, Best & Friedrich, Milwaukee, Wis., for defendant-appellee.

Before CUDAHY, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This appeal requires us to consider the meaning of the term "employee welfare benefit plan" in ERISA. The statutory definition is "any plan, fund, or program ... established or maintained by an employer or by an employee organization ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment [etc.]." 29 U.S.C. § 1002(1)(A). The plaintiff, an

employee of United Community Center in Wisconsin, was enrolled in a medical insurance plan offered through her employer by a Blue Cross–Blue Shield subsidiary called Compcare. She brought a suit against Blue Cross–Blue Shield in a Wisconsin state court, charging that Compcare had both broken its contract with her, and acted in bad faith, in refusing to reimburse her for medical expenses incurred in connection with an unusual ailment that she had contracted. Why she sued Blue Cross–Blue Shield instead of Compcare, a corporation in its own right, is unclear; in any event the parties agreed to substitute Compcare for Blue Cross–Blue Shield as the defendant.

Compcare removed the case to the district court on the ground that the plan in which the plaintiff was enrolled was an employee welfare benefit plan within the meaning of ERISA. The parties agree, as they must, that a suit for benefits allegedly due under an ERISA plan arises under ERISA, and therefore under federal law, and hence is removable to federal district court. 29 U.S.C. § 1132(a)(1)(B); H.R. Conf.Rep. No. 1280, 93d Cong., 2d Sess. 326–27 (1974), U.S.Code Cong. & Admin. News 1974, 4639, 5106–07; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Reiherzer v. Shannon*, 581 F.2d 1266, 1269–72 (7th Cir.1978). They also agree that if the plaintiff's claim arises under ERISA, her state breach of contract claim is preempted. See 29 U.S.C. § 1144(a). It makes no difference that the defendant is the insurer rather than the employer. See *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

The plaintiff's petition to remand the case to state court on the ground that it wasn't really an ERISA plan was denied, and the district judge went on to grant the defendant's motion for summary judgment and dismiss the case on the merits, finding no abuse of discretion in Compcare's determination that the benefits the plaintiff was seeking were not within the scope of the plan. The plaintiff appeals, arguing only that the plan is not an ERISA plan, and that the case should therefore be remanded to state court to allow her to pursue her remedies under Wisconsin law.

If an employer offers no welfare benefit plan to its employees but leaves each employee free to shop around for his or her own health (accident, disability, life, etc.) insurance, ERISA does not apply. And we may assume, in accordance with the Department of Labor's regulation attempting to clarify the statutory definition of an employee welfare benefit plan, 29 C.F.R. § 2510.3–1(j), that the employer could take a few steps beyond this and still remain outside the scope of the Act—such steps as distributing advertising brochures from insurance providers, or answering questions of its employees concerning insurance, or even deducting the insurance premiums from its employees' paychecks and remitting them to the insurers. At the other extreme, the employer who provides welfare benefits directly to its employees has by virtue of doing so an ERISA plan. This is an intermediate case. The employer made contracts with two insurance companies whereby those companies agreed to offer health insurance to its employees on the terms specified in the contracts, including the price of the insurance. This left each employee free to choose between the two providers. All employees were eligible except probationary employees, that is, those who had been employed for fewer than thirty days. And the employer paid for the worker's (but not dependents') share of the insurance premiums. So the "plan" (if that is what it was) had three components: the contractual arrangements between the employer and the insurance companies whereby the latter agreed to insure the former's employees; the eligibility requirement of being an employee of more than thirty days' standing; and the employer's contribution of the worker's share of the insurance premiums. The employer also collected and remitted the premiums that the workers themselves paid for their dependents; but that is done, as we have said, in many arrangements that are not ERISA plans.

Is this rather barebones plan an ERISA plan? We think it is. The approach followed by the United Community Center appears to be (with the sole and, we shall see, irrelevant exception of the presence of two insurers) a common method by which employers provide health and other welfare benefits to their employees, and not one that has heretofore been thought to take a benefits plan out of ERISA. The statute by its express terms encompasses the provision of such benefits by means of insurance, and once the employer elects that route his participation in the actual provision of the benefits is unlikely to be any greater than the employer's in this case. If this employer's arrangement is less common than we suppose, it was the plaintiff's burden to enlighten the district judge and us by presenting evidence concerning the character of the various employee welfare benefit arrangements that are in force. An employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation. This is especially clear when in addition, as was done here, the employer helps defray the employee's insurance cost, although from an economic standpoint there is little difference between payment nominally by the employer—which the employer will treat as a cost of employment, causing him to pay a lower wage than otherwise—and payment nominally by the employee.

The fact that in this case the employer offered a choice of plans rather than a single plan can make no difference, for it is commonplace to offer employees benefit options. The fact that each plan was offered by a different insurer may introduce a bit of novelty but does not alter our conclusion. The choice offered remained a distinctly finite one, resulting from contracts made by the employer with selected insurance companies, and is not the same as leaving the procuring of insurance entirely to the employee. The contracts "established" a plan for specified employees having an elective feature which did not in our view affect its character as a plan.

The cases support this conclusion. See *Kanne v. Connecticut General Life Ins. Co.,* 859 F.2d 96 (9th Cir.1988); *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir. 1987); *Roe v. General American Life Ins. Co.,* 712 F.2d 450 (10th Cir.1983); *Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277 (11th Cir.1987); *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982). So does the Department of Labor regulation, cited earlier, although the regulation emphasizes that in creating a safe harbor it does not automatically invalidate all arrangements on the high seas. See 29 C.F. R. § 2510.3–1(a)(4).

The type of complicated, variable, case-by-case standard that the plaintiff advocates would create more uncertainty and litigation than the gain in substantive justice would warrant. Employers, employees, and insurance companies would have no clear idea whether their rights and obligations were defined by federal law or by state law. The contingent feature of a true welfare benefits plan, stressed in the Supreme Court's recent decision in *Massachusetts v. Morash,* —— U.S. ——, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), is unaffected by the delegation of administration of the plan to an insurance company—a delegation in fact contemplated by the statute.

The plaintiff complains that as a result of the interaction between the broad definition of employee welfare benefit plan that we adopt today and the preemption of state contract law by ERISA, she has less legal protection against the insurer's refusal to pay benefits than she would have if ERISA had never been enacted and this case was therefore governed by state law. In a state court she could sue for simple breach of contract; in an ERISA suit she must establish a breach of trust, which means, she says, prove that the trustee (in this case Compcare) abused its discretion. This was the standard when the case was tried, but is no longer, the Supreme Court having repudiated it in *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to

be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*, 109 S.Ct. at 956.

All this is not to deny the strangeness, as an original matter, of transforming disputes between employees and insurance companies over the meaning of the insurance contract into suits under ERISA. But the Supreme Court crossed this Rubicon in *Metropolitan Life Ins. Co. v. Taylor, supra,* reversing *Taylor v. General Motors Corp.*, 763 F.2d 216 (6th Cir.1985), which had held that a suit under the group insurance policy was not a suit under the ERISA plan pursuant to which the policy had been issued. Although we find it difficult to understand why such cases should be litigated in federal court, we are unable to escape the pull exerted by the statute, the administrative regulation, and the precedents.

AFFIRMED.