Jackie **ROBERTSON** and Craig **Robertson, Plaintiff and Appellants,**

v.

**GEM INSURANCE COMPANY, Defendant and Appellee.**

No. 910214–CA.

Court of Appeals of Utah.

Feb. 27, 1992.

Jeffery C. Peatross (argued), Ivie & Young, Provo, for plaintiff and appellants.

Jeffrey Oritt (argued), Wilkins, Oritt & Ronnow, Salt Lake City, for defendant and appellee.

Before Judges BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Jackie and Craig Robertson appeal from the trial court's order dismissing their state tort and contract claims against Gem Insurance Company (Gem). The Robertsons also appeal from the portion of the trial court's judgment that denied attorney fees relating to the dismissed claims. We reverse and remand the trial court's order to dis-miss. We affirm the trial court's judgment with respect to attorney fees.

## BACKGROUND

On or about November 1, 1988, Mountain States Steel (MSS), Craig Robertson's employer, was accepted as a member in the Intermountain Employees Trust (IMET), a multi-employer trust. IMET contracted with Gem for the purpose of allowing member employees to acquire group health insurance. Craig Robertson and his wife, Jackie, became beneficiaries under the Gem policy effective November 1, 1988. MSS contributed all premiums for its employees covered by Gem, and provided payroll deductions for designated employees' dependents' premiums, including those for Jackie Robertson.

On December 25, 1988, Jackie Robertson sustained an injury requiring medical treatment. She submitted claims for the medical care to Gem, which denied coverage alleging a preexisting condition. The Robertsons sued Gem for the policy benefits relating to Jackie Robertson's injury, and in addition claimed breach of implied covenant of good faith and fair dealing, misrepresentation, intentional infliction of emotional distress, and sought punitive damages.

The trial court granted Gem's motion to dismiss all claims except those relating to the policy benefits and attorney fees, on the basis that the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, preempted all of the Robertsons' common law claims. After a bench trial, the trial court awarded the Robertsons judgment on their policy benefits claim. In addition, after hearing argument with respect to all attorney fees the Robertsons incurred, the trial court awarded the Robertsons attorney fees for only the claims upon which they had prevailed. Gem paid the full judgment amount, including the portion designated for attorney fees. The Robertsons accepted the payment and an unqualified satisfaction of judgment was entered.

## ISSUES

The Robertsons contend the trial court erred in granting Gem's motion to dismiss because it mistakenly concluded that their insurance policy was an "employee benefit plan" under ERISA. They argue that a mere purchase of group health insurance is not an employee benefit plan, and that a plan could not be found to exist in this case without additional fact finding. Gem, to the contrary, contends the trial court correctly held that a plan exists if the employer merely makes arrangements for its employees' insurance. The parties agree that if an employee benefit plan exists, ERISA preemption is applicable and the trial court properly dismissed the claims.

The Robertsons further contend the trial court erred in its resolution of their claim for attorney fees because it considered the claim under state law, not ERISA. They also argue that because the judgment was for attorney fees on claims on which they prevailed, the issue of additional attorney fees remains unresolved until the appellate process is completed. Gem contends the satisfaction of judgment precludes further consideration of the attorney fees issue. It argues in the alternative that if the trial court applied incorrect law, it was harmless error.

## STANDARD OF REVIEW

■ Grant of a motion to dismiss will be upheld "only where it appears that the plaintiff or plaintiffs would not be entitled to relief under the facts alleged or under any state of facts they could prove to support their claim." *Prows v. State*, 822 P.2d 764, 766 (Utah 1991). On appeal, we accept the facts as alleged in the complaint as true, and consider those facts and all reasonable inferences therefrom, in a light most favorable to plaintiffs. *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 669 (Utah 1989). We review the trial court's legal conclusions on a motion to dismiss for correctness. *Id.*

■ Generally, an attorney fee award is within the court's discretion and will not be reversed absent an abuse of discretion.

*Paul Mueller Co. v. Cache Valley Dairy Ass'n*, 657 P.2d 1279, 1287 (Utah 1982). However, some of the arguments presented on the attorney fees issue involve questions of law, which we review without deference, for correctness. *Christensen v. Munns*, 812 P.2d 69, 70 (Utah App.1991).

## ERISA PREEMPTION

ERISA was enacted by Congress to protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). ERISA was intended to provide comprehensive regulation of employee benefit plans which, " 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (quoting 29 U.S.C. § 1002(1)). ERISA covers any "employee benefit plan" which is established or maintained by an employer or employee organization. 29 U.S.C. § 1003(a).

ERISA includes a comprehensive civil enforcement plan which "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556. It also includes provisions which preempt any actions based on state law which "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The term "relate to" is broadly construed in order to eliminate conflicting or inconsistent state or local regulation of employee benefit plans. *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552.

■ ERISA preempts state common law and contract claims, including all those dismissed herein by the trial court, when

there is an employee benefit plan under ERISA. *Id.; Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir.1991). Both parties agree that the dispositive issue in this case is whether or not the Gem insurance policy was part of an employee benefit plan. If a plan exists, it bars state claims against an insurance company as well as any state claims against the employer or employee organization which established the plan. *Brundage–Peterson v. Compcare Health Care Servs. Ins. Corp.*, 877 F.2d 509, 510 (7th Cir.1989); *Rizzi v. Blue Cross of California*, 253 Cal.Rptr. 541, 551, 206 Cal.App.3d 380 (1988), *cert. denied*, 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989) (both citing *Pilot Life*, a suit against an insurer).

■ The defendant has the burden of proving a preemption defense. *Settles*, 927 F.2d at 508. Because in this case, preemption is dependent on finding an ERISA plan, Gem has the burden of proving that an employee benefit plan exists.

"The existence of an ERISA plan is a question of fact to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988); *see also, Rizzi*, 253 Cal.Rptr. at 543. Because of *Pilot Life*'s expansive holding that actions for improper handling of insurance claims under an ERISA plan are preempted, the question of whether an ERISA plan exists becomes vital. *Kanne*, 867 F.2d at 489.

" '[E]mployee benefit plan' and 'plan' are defined only tautologically in [ERISA], each being described as 'an employee welfare benefit plan or employee pension benefit plan or a plan which is both an employee welfare benefit plan and employee pension benefit plan.' " *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8–9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987); *see* 29 U.S.C. § 1002(1). *Fort Halifax* is the only United States Supreme Court case to date which has addressed whether an "employee benefit plan" existed under given facts, necessitating preemption. In *Fort Halifax*, a Maine statute required a one-time sever-

ance payment to employees by employers who terminated plant operations. 482 U.S. at 5–6, 107 S.Ct. at 2214. The Court noted that ERISA preemption applies to state laws affecting employee benefit plans, not employee benefits. 482 U.S. at 7–8, 107 S.Ct. at 2215. The Court further stated that the most important consideration is congressional purpose in enacting ERISA. Congress intended to eliminate conflicting state and local regulation. 482 U.S. at 11–12, 107 S.Ct. at 2217. The Court concluded that actions under Maine's statute were not preempted by ERISA because Maine's statute "creates no impediment to an employer's adoption of a uniform administration scheme [and] not only fails to implicate the concerns of ERISA's preemption provision, it fails to implicate the regulatory concerns of ERISA itself." 482 U.S. at 15–16, 107 S.Ct. at 2219.

■ Because of the lack of a precise definition of an ERISA employee benefit plan in the Act itself, many cases have looked to Department of Labor regulations excluding some insurance programs from ERISA employee benefit plans, as follows:

(j) *Certain group or group-type insurance programs.* For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with

the program, other than reasonable compensation, excluding any profit, or administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1987).

The Seventh Circuit interpreted the Department of Labor regulations to allow an employer to take a "few steps beyond" leaving each employee to obtain his or her own health insurance, and remain outside the scope of ERISA. *Brundage–Peterson*, 877 F.2d at 510. Examples of those permissible steps were described as "distributing advertising brochures from insurance providers, or answering questions of its employees concerning insurance, or even deducting the insurance premiums from its employees' paychecks and remitting them to the insurers." *Id.* An intermediary case existed, however, where an employer contracted with two insurance companies and all eligible employees (those with at least thirty days on the job) could choose between them. The employer paid employees' but not dependents' premiums. The court concluded that this was an ERISA plan, albeit a barebones one. *Id.*

*Brundage–Peterson* does not address an earlier Seventh Circuit decision cited by the Robertsons, *Wayne Chemical, Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692 (7th Cir.1977). In *Wayne Chemical*, the court held that insurance was not covered by ERISA where the employer lacked the requisite intent. "Establishing, maintaining, or participating in a plan requires an intent, which presupposes an awareness of the existence of the plan." *Id.; see also, Turnbow v. Pacific Mut. Life Ins.*, 104 Nev. 676, 765 P.2d 1160, 1161 (Nev.1988) ("ERISA does not regulate the bare purchase of health insurance where, as here, there is no indication that the employer intended to guarantee the continued furnishing of the benefits.").

In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the Secretary of Labor sued the trustees of a multi-employer trust and its subsidiaries, alleging they were fiduciaries under ERISA. The district court held that the trustees were not subject to

ERISA because no employee benefit plan existed. In reversing this ruling, the Eleventh Circuit noted that ERISA does not require a formal, written plan, and that a plan's existence is not contingent upon a decision to establish a plan. *Id.* at 1372. Rather,

[a]cts or events that record, exemplify or implement the decision will be direct or circumstantial evidence that the decision has become reality—e.g., financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, assuring employees that the plan or program exists—but it is the reality of a plan, fund or program and the decision to extend certain benefits that is determinative.

*Id.* Purchase of insurance, alone, does not establish a plan, but may be evidence of a plan, while "the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan ... has been established." *Id.* at 1373. The court concluded from the record that a plan existed where subscribers to the trust included employers; the declared purpose of the trust was to provide insurance for employees and their dependents; employers were committed to providing benefits; and all looked to the insurance policy and insurer to determine eligibility for benefits.

In *Donovan*, the Eleventh Circuit distanced itself from the former Fifth Circuit's *Taggart Corp. v. Life and Health Benefits Admin.*, 617 F.2d 1208 (5th Cir. 1980). In *Taggart*, the court stated, "we cannot believe that act regulates bare purchases of health insurance when, as here, the purchasing employer neither directly nor indirectly owns, controls or assumes responsibility for the policy or its benefits." *Id.* at 1211. In *Donovan*, the court stated that to the extent *Taggart* implies that an employer who only purchases group health insurance or joins a multi-employer trust "cannot be said to have established or maintained an employee welfare benefit plan, we disagree," eschewing that theory for the Eleventh Circuit. *Donovan*, 688 F.2d at 1375.

In *Rizzi*, the Second District of the California Court of Appeals discussed *Donovan* and other federal ERISA cases, noting that some had found a plan to exist "where the employer contributes toward the premiums, even when not otherwise significantly administering the program." *Rizzi*, 253 Cal.Rptr. at 543. *Rizzi* also described court decisions ranging from those holding that only one of the Department of Labor criteria need exist to establish a plan, to those requiring all four be present. *Id.* at 543–47. The *Rizzi* court concluded that under the facts before it, an employee benefit plan existed. Those facts were that the employer contributed insurance premiums for employees and exercised other controls over the program operations.

A different result was reached under similar facts, by the Second District of the California Court of Appeals in *Sayble v. Blue Cross of So. California*, 256 Cal. Rptr. 820 (1989).* The parties presented a statement of uncontroverted facts:

> Swiss American [employer] paid the premiums for health insurance; Biles & Cook provided administrative services and processed claims for professional services under the terms of NEST [multiple employer trust]/Blue Cross agreement; Blue Cross made all determinations with regard to eligibility and processed claims for hospital benefits; neither Blue Cross nor Swiss American filed reports with the Department of Labor; Swiss American had no express agreement with its employees to provide health insurance.

*Id.* at 822. After discussing ERISA and cases thereunder, the court determined that "the existence of an ERISA plan depends on the extent to which the employer is involved in the administration of the benefit program so as to implicate the concerns which gave rise to ERISA." *Id.* at 824–25. Because the employer's role was

minor, the court concluded that the "regulatory concerns of ERISA are not implicated.... Therefore, the rationale of ERISA is not served in this fact situation." Concluding that an employee benefit plan under ERISA did not exist, the court allowed pursuit of plaintiff's state claims for tortious breach of insurance contract. *Id.* at 826.

Other cases have presumed the existence of an ERISA plan with little analysis, while focusing on the extent of preemption or other issues. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Settles*, 927 F.2d 505; *Roe v. General Am. Life Ins. Co.*, 712 F.2d 450 (10th Cir.1983).[1] Utah's state appellate courts have not addressed the issue of what constitutes an employee benefit plan under ERISA. While we are bound by decisions of the United States Supreme Court interpreting federal law, "[i]t is well settled that decisions of the United States district courts and the circuit courts are not binding on [state] courts.... However, such decisions may be adopted to the extent that we find the reasoning and rationale persuasive." *Rizzo v. Travelers Ins. Co.*, 193 Ill.App.3d 67, 140 Ill.Dec. 159, 549 N.E.2d 810 (1989).

To summarize our reading of controlling and/or persuasive precedent: Existence of an employee benefit plan is a question of fact, to be determined by an objective standard, in light of all the pertinent circumstances and the purposes sought to be served by ERISA. The extent of employer involvement in the administration and maintenance of the plan is of critical importance. The bare contribution of premiums to cover insurance purchased is not enough to establish an employee benefit plan. Congress intended to protect beneficiaries of plans by requiring disclosure, reporting, and specified standards of responsibility, and to avoid inconsistencies in administra-

---

* Editor's Note: Review Denied and Ordered not officially published June 8, 1989. See Cal.Rules of Court, Rule 976.

1. Gem has cited *Peckham et al. v. Gem State Mut. of Utah*, No. Civ. 88–1513–T, slip op. (W.D.Okla. August 1, 1989) (Thompson, C.J.) as supportive authority. *Peckham*'s facts are similar to those herein and relies heavily on *Donovan* and its progeny for its finding of an ERISA-governed plan. As noted elsewhere in our opinion, however, we decline to adopt *Donovan* so wholeheartedly.

tion requirements. Consideration should be given to the factors set forth in the Department of Labor regulations, but finding of any one factor is not determinative. We decline to follow the broad definition utilized in *Donovan* and followed without question in a line of subsequent cases.

■ Fact development in this case is sparse. The Robertsons have alleged or agreed only that insurance was obtained from Gem through IMET and that Craig Robertson's employer paid his premiums and arranged for his wife's premium to be deducted from his paychecks. The Robertsons claim there are other, disputed facts, which are relevant to a determination of whether a plan exists. The trial court apparently found a plan to exist based on the sole fact that the employer helped make arrangements for insurance for its employees. We believe that is not a sufficient factual basis to conclude, as a matter of law, that a plan existed. The Robertsons are entitled to fully develop and present their evidence and have a fact finder determine if an ERISA plan existed.

■ Since this is a case of first impression in Utah, we set forth some further analytical tools for use by the trial court. The facts and evidence presented at trial should be reviewed in consonance with the statutory purposes of ERISA generally, and of its preemption provisions in particular. Preemption was intended to avoid inconsistent or conflicting state or local regulation, thus improving efficiency by providing standard procedures for processing claims and disbursing benefits. *Fort Halifax*, 482 U.S. at 11–12, 107 S.Ct. at 2217. Congress recognized that "employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would" be inefficient. *Id.*

■ The line between an ERISA plan and a non-ERISA plan depends to some extent on the level of employer involvement that would justify federal regulation

of plan administration. *Rizzi*, 253 Cal. Rptr. at 547. Congressional policy, as expressed in ERISA, "recognizes the proliferation of employee benefit plans, certain abuses resulting in employee loss of [plan] benefits, and the need for Congress to establish certain minimal standards to assure 'the equitable character of such plans and their financial soundness.'" *Sayble*, 256 Cal.Rptr. at 823 (quoting 29 U.S.C. § 1001(a)). If there is no potential for "employer abuses such as self-dealing, imprudent investing, and misappropriation of plan funds," the aims of ERISA are not at stake. We also note the admonition in the *Sayble* decision:

> Respondents in effect argue the mere payment by an employer of premiums for employee health insurance is sufficient to constitute a plan governed by ERISA. Were that the case, every garden variety employee health insurance benefit would subject the paying employer, large or small, to ERISA's regulatory burdens, and would bind the insured employee to ERISA's remedies.
>
> However, where an obligation generates no administrative activity potentially subject to employer abuse, the regulatory concerns of ERISA are not implicated.

*Id.* at 827.

We therefore reverse and remand the order granting Gem's motion to dismiss the Robertsons' state law tort and contract claims.

## ATTORNEY FEES

The Robertsons claim the trial court erroneously relied on *Mountain States Broadcasting v. Neale*, 776 P.2d 643 (Utah App.1989),[2] in awarding them attorney fees relating only to those issues upon which they prevailed. They argue that ERISA controls and that the trial court should have relied on cases decided under ERISA.

■ ERISA allows for an award of attorney fees as follows: "In any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its

---

**2.** We observe that *Mountain States* addresses attorney fees awardable under a contract allowing fees to the *prevailing party*, 776 P.2d at 648–49, not under a statute, as argued here.

discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Cases construing this section have generally held that only the prevailing party is entitled to attorney fees. *Davis v. Chicago Mun. Employees Credit Union*, 891 F.2d 182, 184 (7th Cir.1989); *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589–91 (9th Cir.1985); *Saret v. Triform Corp.*, 662 F.Supp. 312, 317 (N.D.Ill.1986); *Davis v. Simpson Employees Retirement Trust*, 62 Or.App. 103, 659 P.2d 990, 995 (1983). The statute specifically states that the court has discretion to award fees, and the court may, acting within its discretion, refuse to award fees to a prevailing party. *Davis*, 891 F.2d at 184; *Saret*, 662 F.Supp. at 317. The standard of review on appeal under ERISA is an abuse of discretion. *Operating Engineers Pension Trust v. Beck Engineering & Surveying*, 746 F.2d 557, 569 (9th Cir.1984).

█ Because there is no substantial difference between the law the trial court applied and federal law under ERISA, the error, if any, is harmless, as the result is not different than allowed under federal law.

█ Furthermore, the Robertsons waived their right to appeal the issue of entitlement to fees as a nonprevailing party by accepting a check for $13,764.22, the full amount of the judgment, and thereafter executing an unqualified satisfaction of judgment for filing with the court. "[I]f a judgment is fully paid ... and a judgment satisfied, the controversy has become moot and the right to appeal is waived." *Jensen v. Eddy*, 30 Utah 2d 154, 156, 514 P.2d 1142, 1143 (1973). An exception to this rule exists only if the appeal relates to a separate and distinct part of the controversy and the disposition of one cannot affect the disposition of the other. *Id.; see also, Jacobsen, Morrin & Robbins Const. Co. v. Saint Joseph High School Bd.*, 794 P.2d 505, 506–07 (Utah App.1990). Insofar as the trial court denied the Robertsons attorney fees expended on claims in which they were not the prevailing party, that issue is not before us in the balance of this appeal. We therefore affirm the judgment denying fees for unsuccessful claims.

We note that after remand and subsequent decision by the trial court on the previously dismissed claims, the Robertsons will be able to ask for attorney fees if they then prevail. Those fees may include expenditures up to the initial order of dismissal, as their theory of recovery will then be different.

## CONCLUSION

We reverse and remand the trial court's order granting Gem's motion to dismiss on the basis that Gem is not entitled to judgment as a matter of law under the few facts adduced so far and that there are material issues of fact to be determined by a trier of fact. We affirm the judgment on attorney fees to the extent it denied fees to the nonprevailing party on the basis that the judgment was consistent with applicable federal law and the issue was waived by unqualified acceptance of the judgment.

BILLINGS and GARFF, JJ., concur.